IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| STACY L. WILSON, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 4:20-cv-00319-O-BP |
| § | |
| ANDREW SAUL, § | |
| Commissioner of Social Security, § | |
| § | |
| Defendant. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Stacy L. Wilson ("Wilson") filed this action under 42 U.S.C. § 405(g), seeking judicial review of the denial by the Commissioner of Social Security ("Commissioner") of her application for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Title II of the Social Security Act ("SSA"). ECF No. 1. After considering the pleadings, briefs, administrative record, and applicable legal authorities, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **AFFIRM** the Commissioner's decision.

**I.     STATEMENT OF THE CASE**

Wilson was born on August 30, 1972, has at least a high school education, and is able to communicate in English. *See* Soc. Sec. Admin. R. (hereinafter "Tr."), ECF No. 16-1 at 27. She applied for DIB and SSI on October 7, 2015, alleging that her disability began on January 1, 2014. Tr. 170. When she applied, she was forty-one years old, which is defined as a younger individual. Tr. 34. The Commissioner denied her claim initially on June 22, 2016, and upon reconsideration on November 9, 2016. Tr. 170. Wilson requested a hearing, which was held before Administrative Law Judge ("ALJ") Kevin Batik on October 19, 2017, in Fort Worth, Texas with Wilson and her

attorney present. Tr. 169-70. The ALJ issued his unfavorable decision on February 27, 2018, finding that Wilson was not disabled. Tr. 185.

The Appeals Council ("AC") remanded the case to the ALJ on September 8, 2018. Tr. 191. The AC stated that remand was necessary under a substantial evidence standard because:

> The hearing decision found moderate limitations in adapting or managing oneself (Decision, page 6). However, there were no limitations in the residual functional capacity regarding responding to demands; adapting to changes; managing psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans independently of others; maintaining personal hygiene and attire appropriate to work setting; or being aware of normal hazards and taking appropriate precautions. The claimant has trouble managing her own hygiene due to her multiple sclerosis. She has to sit to get dressed because she loses balance. She needs help washing her hair because her arms get tired (Exhibit B9F, page 3)….Consultative examiner, Keith Christie, PsyD opined that psychological problems made it difficult for her to deal with normal pressures of a competitive work setting (Exhibit B9F, page 6). Further evaluation of the claimant's mental limitations is necessary.

Tr. 193. The AC ordered the ALJ upon remand to:

- Further evaluate the claimant's mental impairments in accordance with the special technique described in 20 CFR 404.1520a(c) and 416.920a(c), a documenting application of the technique in the decision by providing specific findings and appropriate rationale for each of the functional areas described in 20 CFR 404.1520a(c) and 416.920a(c).

- Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 404.1545 and 416.945 and Social Security Ruling 85-16 and 96-8p).

- Obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Ruling 83-14). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566 and 416.966). Further, before relying on the vocational expert evidence the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

Tr. 193-94.

A second hearing was held before ALJ Kevin Batik on May 29, 2019, in Fort Worth, Texas with Wilson, her attorney, and Michael L. Driscoll, a vocational expert ("VE"), present. Tr. 16-17. The ALJ issued his unfavorable decision on July 5, 2019, finding again that Wilson was not disabled. Tr. 28.

Specifically, the ALJ employed the statutory five-step analysis and established during step one that Wilson had not engaged in substantial gainful activity since her alleged onset date of January 1, 2014. Tr. 20. At step two, he determined that Wilson had the severe impairments of multiple sclerosis, vision loss due to multiple sclerosis, major depressive disorder, anxiety disorder, and obesity. *Id.* At step three, the ALJ found that Wilson's impairments did not meet or medically equal two of the "marked" impairments listed in 20 C.F.R. Pt. 404(p). Tr. 20-21. In particular, he concluded that Wilson retained the residual functional capacity ("RFC")

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except the claimant is able to handle, finger, and feel with her bilateral upper extremities frequently; and is able to climb ramps and stairs, balance, stoop, kneel, and crouch occasionally. She is not able to climb ladders, ropes, and scaffolds, crawl, or work in extreme heat, at unprotected heights, or around moving mechanical parts. She is not able to operate a vehicle or read 14-point or smaller print or text as part of her job. The claimant is able to understand, remember, and carry out simple, routine, and repetitive tasks, and can make simple work-related decisions. She is able to occasionally interact with coworkers, supervisors, and the public, and she is able to respond to changes in a routine, unskilled work setting.

Tr. 22. At step four, the ALJ determined that Wilson was unable to perform any past relevant work, which included being a hair stylist and a collection clerk. Tr. 26-27. At step five, the ALJ determined that there were a significant number of jobs in the national economy that Williams could perform, so a finding of "not disabled" was appropriate. Tr. 27-28.

The AC denied review on February 21, 2020. Tr. 7. Therefore, the ALJ's decision is the Commissioner's final decision and is properly before the Court for review. *Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) ("[T]he Commissioner's 'final decision' includes the Appeals Council's denial of [a claimant's] request for review.").

## II.   STANDARD OF REVIEW

Title II, 42 U.S.C. § 404 *et seq.*, of the SSA governs the disability insurance program in addition to numerous regulations concerning disability insurance. *See* 20 C.F.R. § 404 (2020). The SSA defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A) (2020); *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999).

To determine whether a claimant is disabled and thus entitled to disability benefits, the Commissioner employs a sequential five-step analysis. 20 C.F.R. § 404.1520. First, the claimant must not be engaged in any substantial gainful activity. *Id.* § 404.1520(a)(4)(i). "'Substantial gainful activity' is work activity involving significant physical or mental abilities for pay or profit." *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002) (citing 20 C.F.R. § 404.1572(a)-(b)). Second, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(a)(4)(ii); *see Stone v. Heckler*, 752 F.2d 1099, 1100-03 (5th Cir. 1985). Third, disability exists if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). Fourth, the impairments must prevent the claimant from returning to past relevant work. *Id.* § 404.1520(a)(4)(iv). Before this step, the ALJ assesses the claimant's RFC,

which is "the most [a claimant] can still do despite [the claimant's] limitations." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); 20 C.F.R. § 416.945(a)(1). Fifth, impairments must prevent the claimant from doing any work after considering the claimant's RFC, age, education, and work experience. *Crowley*, 197 F.3d at 197-98; 20 C.F.R. § 404.1520(a)(4)(v).

"A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987). "The claimant bears the burden of showing [he or] she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

The Court reviews the Commissioner's decision to determine whether the Commissioner applied the correct legal standards and whether substantial evidence in the record as a whole supports the decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). "Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000) (internal quotation marks omitted) (quoting *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995)). The Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if substantial evidence is present. *Id.*; *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the Commissioner and not the courts to resolve." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (internal punctuation omitted) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

### III. ANALYSIS

Wilson raises two issues on appeal. She claims that the ALJ failed to (1) incorporate appropriate limitations for her ability to adapt and manage herself as the AC required, and (2) identify work in significant numbers which she can perform. ECF No. 12 at 4, 6.

#### A. Substantial Evidence Supports the ALJ's RFC Determination.

Wilson first argues that the ALJ did not consider appropriate limitations in her ability to adapt or manage herself in a work setting as the AC had directed. ECF No. 20 at 8-9. She contends that while the ALJ acknowledged during his second review of the case that Wilson had additional limitations, the RFC did not reflect how those impairments would affect her ability to adapt or manage herself. *Id.* Wilson argues that the ALJ did not consider the limitations noted by the AC "which include difficulty managing her own hygiene; inability to wash her hair by herself; inability to cook more than microwave or simple meals; and being limited to use of an electric cart when shopping." *Id.* at 9. Additionally, Wilson contends the ALJ did not provide a valid rejection of the opinion of consultant examiner Dr. Keith Christie, Psy.D. *Id.* at 9-10.

The Commissioner responds that the ALJ determined Wilson had a moderate limitation in her ability to adapt or manage herself. ECF No. 21 at 4. The Commissioner notes that Wilson testified that she was able to handle her selfcare and personal hygiene. *Id.* However, she did complain that she had difficulty using her hands, which the ALJ accounted for in his RFC. *Id.* Further, the ALJ noted that the evidence of Wilson's ability to manage her mood was mixed. *Id.* While she complained of difficulties in managing her mood, her examinations were normal overall, she used medication to treat her symptoms, and she often denied symptoms of anxiety and depression. Tr. 24. Finally, the Commissioner argues that the ALJ did properly consider the

opinion of Dr. Christie, though he was not required to because Dr. Christie did not render an opinion as contemplated by the applicable regulations. ECF No. 21 at 5-6.

At the outset, the Court notes the obvious point that if the AC believed that the ALJ had not properly addressed the matters remanded to him, it could have addressed those deficiencies in its consideration of Wilson's appeal of the ALJ's decision. It did not to do so. The Court also notes that by definition, a claimant's RFC is the most the claimant can still do despite the claimant's impairments and any related symptoms. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) (2020). The ALJ is not required to expressly state in the RFC the limitations on which it is based. *Cornejo v. Colvin*, No. EP-11-cv-470-RFC, 2013 WL 2539710, at *9 (W.D. Tex. June 7, 2013) (citing *Bordelon v. Astrue*, 281 F. App'x 418, 422-23 (5th Cir. 2008) (per curiam)). "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. [§§] 404.1545 and 416.945." SSR 96–8p, 1996 WL 374184, at *1 (July 2, 1996). The functions in paragraphs (b), (c), and (d) relate to physical, mental, and other abilities. The ALJ considers the nature and extent of the claimant's physical, mental, and other relevant limitations. 20 C.F.R. § 416.945.

In determining a claimant's physical limitations, the ALJ considers evidence of the claimant's abilities to sit, stand, walk, lift, carry, push, pull, and perform other physical functions. *Id.* at § 416.945(b). In determining the claimant's mental limitations, the ALJ considers evidence of the claimant's abilities to understand, remember, and carry out instructions, as well as respond appropriately to supervision, co-workers, and work pressures in a work setting. *Id.* at § 416.945(c). The ALJ uses what is known as the "paragraph B criteria" to rate the degree of the claimant's mental limitations in four areas: understanding, remembering, or applying information; interacting

with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* at § 416.920a; *see id.* Part 404, Subpart P, Appendix 1. Finally, the ALJ considers limitations and restrictions that affect other work-related abilities. 20 C.F.R. § 416.945(d).

Wilson asserts that the ALJ did not properly consider her ability to adapt and manage herself in determining her RFC. In reaching his determination, the ALJ cited the assessments of the state agency consultant, two psychological consultative examiners, various treatment notes, and Wilson's testimony, all of which indicate she has some level of difficulty adapting and managing herself. Tr. 21-26. However, the evidence on this point was conflicting. *Id.* The ALJ noted that Wilson testified she was able to handle her selfcare and hygiene, but she had difficulties using her hands. Tr. 23. The ALJ stated "examinations showed normal coordination, range of motion, movement in all extremities, fine and dexterous finger control." *Id.* The ALJ took this into account and limited Wilson's ability to handle, finger, and feel. Tr. 22 Additionally, the ALJ stated that while the record was mixed on the symptoms arising from Wilson's mental impairments, the evidence suggests she would need to limit her interactions with others to only an occasional basis. Tr. 24. Finally, the ALJ agreed that Wilson should be limited to sedentary work with "some postural and environmental limitations" due to her "record of conservative treatment, periods of treatment gaps and medication non-compliance, occasional MS flare-ups, and record indicating progressively worsening symptoms." Tr. 25.

When evaluating the extent of a claimant's ability to do physical and mental work activities, the ALJ must consider medical opinions together with the rest of the relevant evidence in the record. 20 C.F.R. § 404.1545(a)(3). Wilson has not shown a lack of credible evidence or medical findings that support the ALJ's RFC finding. She argues that the ALJ did not consider certain evidence noted by the AC. ECF No. 20 at 9. However, to upset the ALJ's decision, the plaintiff

must show that there was insufficient evidence for a reasonable person to reach the same conclusion as the ALJ, not that some contradictory evidence might exist. *Newton*, 209 F.3d at 453. While Wilson states the ALJ did not consider the evidence noted by the AC, the ALJ's opinion contains numerous examples of how the ALJ addressed the evidence and considered the issues outlined by the AC. Tr. 22-26. Wilson's disagreement with the ALJ's formulation of the RFC does not carry her burden of establishing that substantial evidence does not support the ALJ's determination. Substantial evidence supported the ALJ's conclusion, despite Wilson's disagreement with her conclusion, and reversal is not required on this point.

Further, Wilson claims that the ALJ did not provide a valid explanation for rejecting Dr. Christie's consultative opinion. ECF No. 20 at 9-10. The Commissioner responds that Dr. Christie's statements did not constitute a medical opinion, but instead were a generalized statement. ECF No. 21 at 5-6. As noted above, the ALJ must consider medical opinions together with the rest of the relevant evidence in the record in evaluating a claimant's ability to do mental and physical work activities. 20 C.F.R. § 416.945(a)(3). An ALJ "generally cannot reject a medical opinion without providing an explanation for that rejection, even if good reasons exist for disregarding the opinion. Failure to explain the rejection of a medical opinion justifies a remand." *Winston v. Berryhill*, 755 F. App'x 395, 398 (5th Cir. 2018) (citing *Kneeland v. Berryhill*, 850 F.3d 749, 759-61 (5th Cir. 2017)).

Medical opinions are statements from an acceptable medical source that reflect judgments about the nature and severity of a claimant's impairments, what a claimant can still do despite her mental impairments, and her physical or mental restrictions. 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). Dr. Christie opined that Wilson's mental impairments "make it difficult for her to deal with normal pressures of a competitive work setting." Tr. 26. His report summarizes clinical

observations and his diagnosis. Tr. 501-06. It does not contain a statement about restrictions on Wilson's ability to work due to her mental impairments. Nevertheless, Dr. Christie's report did contain a medical opinion, and the ALJ was under a duty to weigh this opinion.

Wilson contends that the ALJ failed to give proper weight and consideration to Dr. Christie's opinion. But the record shows otherwise. Contrary to Wilson's assertion, the ALJ did consider Dr. Christie's report in his RFC assessment. Tr. 26. Further, the ALJ gave the opinion partial weight and used Dr. Christie's report to support his finding that Wilson suffered "memory loss, slowed thinking, and inattention." *Id.* Thus, the ALJ considered Dr. Christie's report and did not err as Wilson alleged.

There is no reversible error when the medical evidence does not support any additional limitation. *See Martinez v. Colvin*, No. 4:12-cv-542-A, 2013 WL 5227060, at *7 n.17 (N.D. Tex. Sept. 16, 2013); *Adams v. Colvin*, No. 4:12-cv-490-A, 2013 WL 5193095, at *9 n.6 (N.D. Tex. Sept. 13, 2013). The ALJ properly considered Dr. Christie's medical opinion, though he did not give it the weight that Wilson urges. Wilson has not shown that the ALJ's RFC finding is not based on credible evidentiary choices or medical findings. Therefore, there is no reversible error since the ALJ accommodated Wilson's ability to adapt and manage herself through limiting her to sedentary work, handling, fingering and feeling only frequently, and only occasional interactions with co-workers, supervisors, and the public.

  **B. The Substantial Evidence Supports the ALJ's Step Five Decision.**

Wilson also urges reversal because the ALJ did not identify any occupations which existed in a significant number that she could perform and that are consistent with her RFC. ECF No. 20 at 10. Wilson first alleges that the ALJ did not consider her limitations in adapting or managing herself in his hypothetical question to the VE. ECF No. 20 at 10. The Commissioner responds that

the hypothetical question posed to the VE was not deficient because the ALJ did consider those limitations.

At step five, the Commissioner must show "that there is other substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448. When the ALJ cannot rely on the Medical-Vocational Guidelines to determine disability, he "must rely upon expert vocational testimony or other similar evidence to establish that such jobs exist." *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987) (citation omitted). The ALJ may consult various sources of evidence, including VEs and the Dictionary of Occupational Titles ("DOT"), to determine alternative and available work that the claimant can perform. *Veal v. Soc. Sec. Admin.*, 618 F. Supp. 2d 600, 608 (E.D. Tex. 2009).

This Court has noted:

> When an ALJ bases a determination of non-disability on the testimony of a [VE] in response to a hypothetical question, the hypothetical question is defective and constitutes reversible error if either of the following is true:
> 1. The hypothetical question did not incorporate reasonably all disabilities of the claimant recognized by the ALJ, or
> 2. The claimant or his representative was not afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the [VE] any purported defects in the hypothetical question (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question).

*Detwiler v. Astrue*, No. 5:10-cv-00194-BG, 2012 WL 569188, at *4-5 (N.D. Tex. Jan. 19, 2012), *rec. adopted,* No. 5:10-cv-00194-C-BG, 2012 WL 589577 (N.D. Tex. Feb. 22, 2012) (internal citation omitted). The hypothetical question in this case was not defective because neither of these requirements was met.

First, the hypothetical question reasonably incorporated all of Wilson's disabilities and impairments recognized by the ALJ. In his written opinion, the ALJ recognized Wilson's severe

impairments of multiple sclerosis, vision loss due to multiple sclerosis, major depressive disorder, anxiety disorder, and obesity. Tr. 20. He fashioned an RFC that included Wilson's limitations. Tr. 22. The ALJ incorporated all of her impairments and limitations when he asked the VE the following hypothetical question:

> Assume a hypothetical individual of the claimant's age and education, past work you've described. Further assume the individual is limited to work at the sedentary exertion level. Limited to frequent handling, fingering and feeling bilaterally. Limited to occasional climbing of ramps or stairs, balancing, stooping, kneeling and crouching. Precluded from climbing ladders, ropes and scaffolding, crawling, exposure to extreme heat. Precluded from work – working at unprotected heights, around moving mechanical parts or operating a vehicle as part of the job. Would be precluded from reading any 14 point or smaller print out or text. Limited to understanding, remembering and carrying out simple routine and repetitive tasks. Limited to occasional interaction with coworkers, supervisors and the public, and is able to respond to changes in a routine unskilled work setting, and is able to make simple work related decisions. Could that hypothetical individual perform any of the past work?

*Id.* at 70. As discussed above, the ALJ based the RFC on substantial evidence, including Wilson's ability to adapt and manage herself consistent with objective medical evidence and other evidence of record. The ALJ sufficiently incorporated all disabilities and impairments he recognized in his hypothetical question to the VE, and his question was not materially vague or misleading. As a result, there is not a "significant discrepancy . . . between the limitations included in the hypothetical question posited to the VE and the limitations the ALJ found in his decision." *Ellis v. Astrue*, No. 7:09-cv-00070-O-BF, 2010 WL 3422872, at *5 (N.D. Tex. July 27, 2010). There is no reversible error on this point.

Second, even if the hypothetical question was lacking, Wilson had a reasonable opportunity to correct any deficiencies in the ALJ's question. When a claimant has such an opportunity, she cannot sit by and then later claim that the question was deficient and warrants reversal. *Carey v. Apfel*, 230 F.3d 131, 145-47 (5th Cir. 2000). For this additional reason, Wilson's challenge to the ALJ's hypothetical question to the VE is not valid, and reversal on this basis is not required.

Next, Wilson argues that the ALJ failed to establish the existence of work in significant numbers available in the national economy which she could perform. ECF No. 20 at 10. The VE identified two occupations that match Wilson's RFC: a document preparer and table worker. ECF No. 21 at 6-7. Wilson asserts that a document preparer requires a reasoning level of three according to the DOT and is not compatible with the ALJ's limitation of "simple, routine, and repetitive tasks." ECF No. 20 at 12. Additionally, Wilson contends that the ALJ did not recognize or question the VE about an apparent conflict between the VE's testimony and the DOT, citing the VE Handbook published June 2020. *Id.* at 12-13. The Commissioner responds that a limitation to jobs that involve simple, routine, and repetitive tasks does not equate to an inability to perform jobs designated by the DOT as entailing a reasoning level of three. ECF No. 21 at 7. Further, the Commissioner contends that the ALJ properly inquired whether the VE's testimony was consistent with the DOT, and the VE Handbook does not apply because the ALJ's decision was issued on July 5, 2019, a year before release of the VE Handbook. *Id.*

Wilson argues in her reply that the policy cited in the brief was present in the VE Handbook published in 2017. ECF No. 22 at 6. However, the explanatory footnote was not in the 2017 version. *Id.* Moreover, the "[VE] Handbook guides [VEs] in identifying conflicts to the ALJ. The handbook does not direct the ALJ or the ALJ's determination." *Edwards v. Comm'r, SSA*, No. 4:18-cv-372, 2019 WL 4564833, at *2 (E.D. Tex. Sept. 20, 2019) (citing *Courtney v. Comm'r, SSA*, 894 F.3d 1000, 1005, n.2 (8th Cir. 2018)) (citation omitted). Accordingly, any noncompliance with the VE Handbook is irrelevant to the Court's consideration.

Relying on the VE's testimony, the ALJ found that Wilson could perform the job of document preparer, which is classified as requiring a reasoning level of three under the DOT. *See* DOT § 249.587-018 (4th ed., rev. 1991). The Fifth Circuit has not ruled on the issue, but there is

13

a split of authority in other circuits on whether a claimant limited to simple tasks can perform jobs that the DOT classifies as requiring a reasoning level of three. The Seventh and Eight Circuits have found no conflict, while the Tenth Circuit has found one. *See Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009) (no conflict between job requiring reasoning level three and claimant's limitation to simple work); *Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007) (no conflict with claimant's inability to do complex work where job in question required reasoning level three); and *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (claimant's limitation to "simple and routine work tasks" not consistent "with the demands of level-three reasoning" because claimant's RFC was more consistent with level two than level three reasoning).

Judges of this Court who have confronted the issue likewise are divided. *Compare McMillian v. Colvin*, No. 4:12-cv-661-A, 2014 WL 61172, at *5 (N.D. Tex. Jan. 6, 2014) ("[T]here are a series of cases that have held that a job with a [reasoning level] of 3 is not inconsistent with an RFC determination that limits a claimant to the performance of simple, routine work tasks"), *with Otte v. Comm'r, Soc. Sec. Admin.*, 3:08-cv-2078-P BF, 2010 WL 4363400, at *8 (N.D. Tex. Oct. 18, 2010), *rec. adopted*, 3:08-cv-2078-P BF, 2010 WL 4318838 (N.D. Tex. Oct. 27, 2010) ("Reasoning Level 3 is not compatible with a restriction to simple, routine, repetitive work."), *and Davis v. Astrue*, No. 3-06-cv-883-B, 2008 WL 517238, at *5 (N.D. Tex. Feb. 27, 2008) (claimant limited to following simple or detailed instructions not capable of performing job with reasoning level three).

However, most the Court's judges have found that the DOT's reasoning level three does not "on its face, indicate that jobs with a reasoning development level of three involve more than simple, repetitive work." *Gaige v. Astrue,* No. 4-12-cv-0008-A, 2013 WL 1291754 at *13-14 (N.D. Tex. Mar. 1, 2013), *rec. adopted*, 2013 WL 1286289 (N.D. Tex. Mar. 29, 2013); *Caronia v. Colvin*,

No. 4:12-cv-595-Y, 2013 WL 5192904, at * 6 (N.D. Tex. Sept. 13, 2013) (DOT level three reasoning does not facially indicate that a job will involve more than simple, repetitive work); *Longoria v. Colvin*, No. 3:13-cv-1690-B-BK, 2014 WL 2777473, at *8 (N.D. Tex. May 21, 2014), *rec. adopted*, No. 3:13-cv-1690-B, 2014 WL 2777375 (N.D. Tex. June 18, 2014) ("simple, repetitive work" does not conflict with DOT reasoning leave three jobs).

Further, according to the VE testimony here, the jobs of document preparer and table worker are "low level unskilled sedentary jobs," and this is corroborated by the DOT. Tr. 81; SSR 00–4p, 65 Fed. Reg. at 75760 (unskilled work corresponds to a specific vocational preparation ("SVP") of one to two). As Magistrate Judge Cureton has stated, this characterization of an "occupation as 'unskilled' indicates that it is 'by definition simple.'" *Caronia*, No. 4:12-CV-595-Y, 2013 WL 5192904, at *7 (citing *Gaige,* No. 4-12-cv-0008-A, 2013 WL 1291754 at *14). Thus, because a document preparer has an SVP skill level of two and is considered an "unskilled" and simple job, there is no apparent conflict between the VE's testimony and the information contained in the DOT.

Further, Social Security Ruling 00-4p requires the ALJ to identify any apparent conflicts that exist between the VE's testimony and the DOT by asking the VE whether such an inconsistency exists. *See* SSR 00-4p, 2000 WL 1898704, at *1-2 (S.S.A. 2000); *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016) (citations omitted). The record here does not present any actual conflict between the VE's testimony and the DOT. The ALJ expressly confirmed that the VE's testimony was consistent with the DOT, and Wilson has not shown a conflict between the two. Additionally, she did not identify any conflicts at the administrative hearing, and

> applicants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing.

15

*Carey*, 230 F.3d 146-47. Therefore, unless a "direct and obvious conflict" exists between the VE's testimony and the DOT, the ALJ has met his step five burden. *See* SSR-004p, 2000 WL 1898704, at *4; *Carey*, 230 F.3d at 146 (when "direct and obvious conflict" exists between VE's testimony and DOT, ALJ must resolve conflict by determining whether VE's explanation is reasonable and thus more reliable than DOT); *Nichols v. Comm'r of Soc. Sec. Admin.*, No. 10-cv-0651, 2011 WL 2669056, at *6 (N.D. Tex. June 10, 2011), *rec. adopted*, 2011 WL 2669099 (N.D. Tex. July 6, 2011) (if indirect conflict did not undergo adversarial development at administrative hearing, VE "testimony may be relied upon without resolving the conflict as long as the record reflects an adequate basis for doing so.") (citation omitted).

Both jobs the VE identified are listed as sedentary with a skill level of SVP two. Tr. 74-75. The ALJ complied with his duty under SSR 00-4p by then asking the VE twice, on the record, whether his testimony conformed to the DOT. Tr. 80, 83. The VE testified that it did. *Id.* Wilson's counsel had an opportunity to object to the VE's testimony or cross-examine him further regarding any conflicts between his testimony and the DOT, which he did. Tr. 75-83. Based on the VE's testimony, the ALJ determined that Wilson had an RFC for sedentary work.

Finally, Wilson questions the ALJ's conclusion regarding the existence of document preparer jobs in significant numbers in the national economy. In support, she cites courts that have questioned whether jobs for document preparers exist in significant numbers in the national economy. ECF No. 20 at 14. However, this argument is without merit. Wilson alludes to the fact that because technology has advanced there are fewer opportunities for document preparers. *Id.* In support of this argument, she cites a case that notes there cannot be "nearly 100,000 such jobs," in the national economy. *Id.* (citing *Gulley v. Berryhill*, No. 17-cv-1782, 2019 WL 668836, at *4 (E.D. Wis. Feb. 19, 2019)). Here, the VE testified that 42,000 jobs for a document preparer and

11,000 for table workers exist in the national economy. Tr. 74. Although the total number of these jobs may have decreased substantially in recent years due to advances in technology, the numbers of jobs stated by the VE still are a substantial number in the economy. The ALJ may rely on the VE's testimony to reach a conclusion regarding the claimant's ability to perform work that exists in a significant number in the national economy. *Masterson* 309 F.3d 273. Thus, the undersigned finds that the ALJ's step five finding is supported by substantial evidence.

## IV. CONCLUSION

Because the ALJ employed the correct legal standards, substantial evidence in the record supports his decision, and Wilson has not shown that reversal of the ALJ's decision is required, the undersigned **RECOMMENDS** that Judge O'Connor **AFFIRM** the Commissioner's decision.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b)(1). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

**SIGNED** January 22, 2021.

                                                    Hal R. Ray, Jr.
                                                    UNITED STATES MAGISTRATE JUDGE