IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| STACY L. WILSON, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 4:20-cv-00319-O-BP |
| § | |
| ANDREW M. SAUL, Commissioner of § | |
| Social Security Administration, § | |
| § | |
| Defendant. § | |

### ORDER ACCEPTING FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

On January 22, 2021, the United States Magistrate Judge issued Findings, Conclusions, and a Recommendation (the "FCR") in this case. FCR, ECF No. 23. The FCR recommended that the Court affirm the decision of the Commissioner of the Social Security Administration. *Id.* at 1. Plaintiff Stacy L. Wilson ("Wilson") filed an Objection to the FCR of the United States Magistrate Judge on February 3, 2021. Pl.'s Obj., ECF No. 24.

The Court has conducted a de novo review of the FCR. For the following reasons, Plaintiff's Objection is **OVERRULED**, and the Court **ADOPTS** the reasoning in the Magistrate Judge's FCR. The Court **AFFIRMS** the Commissioner's decision.

I.     FACTUAL BACKGROUND

Plaintiff Stacy L. Wilson applied for disability insurance benefits and supplemental security income on October 7, 2015, alleging that her disability began on January 1, 2014. *See* Soc. Sec. Admin R. 170, ECF No. 16-1. On June 22, 2016, the Commissioner denied her claim and, upon reconsideration on November 9, 2016, again denied her claim. *Id.* at 170. Wilson requested

1

a hearing, which was held before Administrative Law Judge (ALJ) Kevin Batik on October 19, 2017, in Fort Worth, Texas, with Wilson and her attorney present. *Id.* at 169–70.

Following the hearing, the ALJ's February 27, 2018, decision concluded that Wilson was not disabled. *Id.* at 185. But the Appeals Council (AC) remanded the case to the ALJ on September 8, 2018, finding a lack of substantial evidence and ordering the ALJ to (1) "further evaluate the claimant's mental impairments[,]" and (2) "give further consideration to claimant's maximum residual functional capacity and provide appropriate rationale[,]" and (3) "obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitation on the claimant's occupational base[.]" *Id.* at 193–94.

On May 29, 2019, the ALJ conducted a second hearing in Fort Worth, Texas, with Wilson, her attorney, and a vocational expert ("VE") Michael L. Discoll, present. *Id.* at 16–17. Following the hearing and testimony from the VE, the ALJ again found that Wilson was not disabled. *Id.* at 28. Specifically, the ALJ used the statutory five-step analysis and established during step one that Wilson had not engaged in substantial gainful activity since her alleged onset date of January 1, 2014. *Id.* at 20. At step two, the ALJ concluded that Wilson had the severe impairments of multiple sclerosis, vision loss due to multiple sclerosis, major depressive disorder, anxiety disorder, and obesity. *Id.* At step three, the ALJ concluded that Wilson's impairment did not meet or medically equal two of the "marked" impairments listed in 20 CFR 404(p). *Id.* at 20–21. At step four, the ALJ concluded that Wilson was unable to perform any past relevant work, which included being a hair stylist and a collection clerk. *Id.* at 26–27. At step five, the ALJ concluded that Williams could perform a significant number of jobs in the national economy, so a finding of "not disabled" was appropriate. *Id.* at 27–28.

Wilson appealed the decision again, and on February 28, 2020, the AC denied review. *Id.* at 7. Thus, the ALJ's decision is the Commissioner's final decision and is ripe for review by this Court. *Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) ("[T]he Commissioner's 'final decision' includes the Appeals Council's denial of [a claimant's] request for review."). The FCR and Plaintiff's Objection are ripe for the Court's *de novo* review.

## II.     LEGAL STANDARD

On review of the Commissioner's denial of benefits, a court is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied the proper legal standards when evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citing 42 U.S.C. §§ 405(g), 1383(c)(3)). Substantial evidence is defined as more thana scintilla and less than a preponderance, and as being such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The Commissioner, not the court, has the duty to weigh the evidence, resolve material conflicts in the evidence, and make credibility choices. *Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991). So, when applying the substantial evidence standard, the reviewing court does not weigh the evidence, retry the issues, or substitute its own judgment; rather, the court scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a "conspicuous absence of credible choices" or "no contrary medical evidence" to support the Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988) (internal citation omitted).

The Social Security Administration uses a five-step process to determine whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a)(4). The steps are followed in order, and if at

any step the Commissioner determines that the claimant is not disabled, the evaluation need not go on to the next step. *Id.* The five steps consider: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant's impairments are medically severe; (3) whether the claimant's medical impairment or combination of impairments meets or medically equals the criteria listed in the Listing of Impairments; (4) whether the residual functional capacity ("RFC") precludes the claimant from performing his past relevant work; and (5) whether the combination of the claimant's RFC, age, education, and work experience allow for adjustments to be made to permit the claimant to work. *Id.* If the impairment is severe but does not meet or equal a listed mental impairment, then the Commissioner must conduct an RFC assessment. *Id.* § 404.1520a(d)(3).

### III. ANALYSIS OF OBJECTIONS

Wilson objects to the FCR and asks the Court to reverse the Commissioner's decision or alternatively vacate the ALJ's decision and remand the matter for further consideration, maintaining that "the decision of the Commissioner is not supported by substantial evidence." Pl.'s Obj. 1, 9, ECF No. 24. For the foregoing reasons, the Court concludes that substantial evidence supports the ALJ's conclusions at both step three and step five of the statutory analysis

#### A. Substantial Evidence Supports the ALJ's RFC Determination at Step Three

Wilson challenges the ALJ's finding at step three based on three grounds: (1) the ALJ improperly failed to incorporate a limitation in her RFC assessment for her ability to adapt or manage herself; (2) the ALJ improperly declined consider a medical opinion without supplying a reason; and (3) the ALJ relied solely on the testimony of the VE opining on a hypothetical question without providing all limitations and circumstances. *See* Pl.'s Obj. 2–7, ECF No. 24. The Court addresses each objection in turn.

### (1) The ALJ Incorporated a Mental Impairment Limitations Accounting for Wilson's Ability to Adapt or Manage Herself

Wilson argues that although "the ALJ's decision found moderate limitations in [her] ability to adapt or manage herself[,] . . . the [RFC] determination failed to incorporate [relevant] limitations." Pl.'s Obj 2–3, ECF No. 24 (citing Soc. Sec. Admin R. 186, ECF No. 16-1) (highlighting other limitations related to "responding to demands; adapting to changes; managing psychologically based symptoms; distinguishing between acceptable and unacceptable work performance; setting realistic goals; making plans independently of others; maintaining personal hygiene and attire appropriate to the work setting; or being aware of normal hazards and taking appropriate precautions."). Wilson contends that the ALJ's changes to his RFC analysis following remand from the AC was the addition of a single clause: "and she is able to respond to changes in a routine unskilled work setting[.]" Pl.'s Obj 2–3, ECF No. 24 (citing Soc. Sec. Admin R. 16, ECF No. 16-1). Wilson concludes that "this is not sufficient to accommodate the significant limitation in her ability to adapt or manage herself found by the ALJ, and the functional limitations described by the [AC]" because "limitations in the ability to deal with work stress must be specific, and must be posed to the vocational witness." Pl.'s Obj 2–3, ECF No. 24 (citing *William v. Saul*, No. 8:18-cv-2402-T-AEP, 2020 WL 1527855, at *7 (M.D. Fla. Mar. 31, 2020)). After a thorough review of the record and the ALJ's decision, the Court disagrees and concludes that the ALJ properly considered Wilson's ability to adapt or manage herself in the limitation set forth in the RFC.

An RFC is the most a claimant can still do despite the claimant's impairments and any related symptoms. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) (2020). "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis[.]" SSR 96–8p, 1996 WL 374184, at *1 (July 2, 1996) (citing 20 C.F.R. §§ 404.1545, 416.945(b)–(d)). To make this assessment, the ALJ must

consider the nature and extent of the claimant's physical, mental, and other relevant limitations. 20 C.F.R. § 416.945. For physical limitations, the ALJ considers evidence of the claimant's abilities to sit, stand, walk, lift, carry, push, pull, and perform other physical functions. *Id.* For mental limitations, the ALJ considers evidence of the claimant's abilities to understand, remember, and carry out instructions, as well as respond appropriately to supervision, co-workers, and work pressures in a work setting—using what is commonly known as the "paragraph B criteria" to rate the degree of the claimant's mental limitations in four areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* Finally, the ALJ considers limitations and restrictions that affect other work-related abilities. *Id.* The RFC need not expressly state the limitations on which the ultimate RFC is based. *See Cornejo v. Colvin*, No. EP-11-cv-470-RFC, 2013 WL 2539710, at *9 (W.D. Tex. June 7, 2013) (citing *Bordelon v. Astrue*, 281 F. App'x 418, 422-23 (5th Cir. 2008) (per curiam)) ("the limitations on which the RFC is based are not required to be included verbatim in the RFC or in a hypothetical to the vocational expert.")

Here, the Court concludes that the ALJ's July 5, 2019, opinion addressed the evidence and considered the issues outlined by the AC on remand. *See* Soc. Sec. Admin R. 22–26, ECF No. 16-1. For Wilson's mental impairments, the ALJ weighed her own reports against her conflicting medical history, her conflicting reports of daily living activities, and several conflicting medical and psychiatric examinations. *See id.* at 22. The ALJ considered the assessments of all treating providers, Wilson's psychiatric therapist's examination, her fiancé's third-party function report, the global assessment of functioning ("GAF") scores, and the psychological state agency consultants reports—both at the initial and reconsideration levels. *See id.* at 22–26.

The Court concludes that the ALJ's ultimate conclusion that Wilson "can perform a range

of sedentary work" and "is able to respond to changes in routine, unskilled work setting" is supported by substantial evidence in the record. *Id.* at 22, 26, 81. The ALJ considered the entire record and the body of evidence. *Id.* at 22–26. Though Wilson focuses on the ALJ's lack of specificity regarding which of Wilson's mental limitations accounts for Wilson's ability to adapt or manage herself, the ALJ found a mental limitation to only sedentary work, handling, fingering and feeling only frequently, and only occasional interactions with co-workers, supervisors, and the public. *See id.* An ALJ need not always do an "exhaustive point-by-point discussion" to support a conclusion. *Aulder v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). Wilson's first objection is **OVERRULED.**

### (2) Consideration of Dr. Christie's Testimony

Second, Wilson contends that in formulating the RFC, the ALJ failed to provide a reason for rejecting a treating source Dr. Keith Christie's testimony. *See* Obj. 4, ECF No. 24; *see also* Soc. Sec. Admin R. 888–94, ECF No. 16-1.

When evaluating the extent of a claimant's ability to do physical and mental work activities, the ALJ must consider medical opinions together with the rest of the relevant evidence in the record. 20 C.F.R. § 404.1545(a)(3). Medical opinions are statements from an acceptable medical source that reflect judgments about the nature and severity of a claimant's impairments, what a claimant can still do despite her mental impairments, and her physical or mental restrictions. 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). An ALJ "generally cannot reject a medical opinion without providing an explanation for that rejection, even if good reasons exist for disregarding the opinion. *Winston v. Berryhill*, 755 F. App'x 395, 398 (5th Cir. 2018) (citing *Kneeland v. Berryhill*, 850 F.3d 749, 759-61 (5th Cir. 2017). "Failure to explain the rejection of a medical opinion justifies a remand." *Id.*

Here, Wilson's argument is factually deficient. The ALJ considered Dr. Christie's report in the RFC assessment, giving it partial weight to support the conclusion that Wilson suffered from "memory loss, slowed thinking, and inattention." *See* Soc. Sec. Admin R. 26, ECF No. 16-1. Considering Dr. Christie's testimony in part, the ALJ found a mental limitation to only sedentary work, handling, fingering and feeling only frequently, and only occasional interactions with co-workers, supervisors, and the public. *See id.* Thus, the ALJ properly considered Dr. Christie's medical opinion without giving it the weight Wilson contends it should have received, so the ALJ's finding does not constitute reversible error. *See, e.g., Martinez v. Colvin*, No. 4:12-cv-542-A, 2013 WL 5227060, at *7 n.17 (N.D. Tex. Sept. 16, 2013) (finding no reversible error when the medical evidence does not support any additional limitation). Wilson's second objection is **OVERRULED.**

### (3) The ALJ Properly Relied on the Testimony of a Vocational Expert

Wilson contends that the ALJ improperly relied on the testimony of the VE in response to a hypothetical question to conclude Wilson is not disabled. *See* Obj. 8–9, ECF No. 25. A hypothetical question qualifies as a reversible error in one of two situations. *Detwiler v. Astrue*, No. 5:10-CV-00194-BG, 2012 WL 569188, at *4 (N.D. Tex. Jan. 19, 2012), *report and recommendation adopted by* No. 5:10-CV-00194-BG, 2012 WL 589577 (N.D. Tex. Feb. 22, 2012) (citing *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994)). Either "the hypothetical question did not incorporate reasonably all disabilities . . . recognized by the ALJ" or "the claimant or his representative was not afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical question." *Id.* at *5. When there is a "significant discrepancy . . . between the limitations included in the hypothetical question posited to the VE and the limitations the ALJ found in his decision,"

there is a reversible error. *Ellis v. Astrue*, No. 7:09-CV-70-O-BF, 2010 WL 3422872, at *5 (N.D. Tex. July 7, 2010). When a claimant has an opportunity to correct any deficiencies in an ALJ's hypothetical question, the claimant must raise the deficiency else she cannot later claim that the question was deficient and warrants reversal. *See Carey v. Apfel*, 230 F.3d 131, 145-47 (5th Cir. 2000).

The Court finds that the hypothetical question reasonably incorporated all disabilities of the clamant recognized by the ALJ and that the claimant was afforded the opportunity to correct any deficiencies in the ALJ's question. The ALJ recognized Wilson's severe impairments of multiple sclerosis, vision loss due to multiple sclerosis, major depressive disorder, anxiety disorder, and obesity. *See* Soc. Sec. Admin R. 20, ECF No. 16-1. He created an RFC that included Wilson's limitations, incorporating all of her impairments. *See id.* at 26. At a hearing with Wilson and her representative present, the ALJ, first listing all limitations and impairments corresponding with the written opinion, asked the vocational expert the following hypothetical:

> [A]ssume a hypothetical individual of the claimant's age and education, past work you've described. Further assume the individual is limited to work at the sedentary exertion level. Limited to frequent handling, fingering and feeling bilaterally. Limited to occasional climbing of ramps or stairs, balancing, stooping, kneeling and crouching. Precluded from climbing ladders, ropes and scaffolding, crawling, exposure to extreme heat. Precluded from work—working at unprotected heights, around moving mechanical parts or operating a vehicle as part of the job. Would be precluded from reading any 14 point or smaller print out or text. Limited to understanding, remembering and carrying out simple routine and repetitive tasks. Limited to occasional interaction with coworkers, supervisors and the public, and is able to respond to changes in a routine unskilled work setting, and is able to make simple work related decisions. Could that hypothetical individual perform any of the past work? . . . Could that hypothetical individual perform any other work in the national economy[,] and if so, can you give me some examples?

*Id.* at 73–74.

Based on the written opinion and the face of the question, the ALJ sufficiently incorporated all disabilities and impairments he recognized in his hypothetical question to the vocational expert.

Moreover, there is not a significant discrepancy between the limitations included in the hypothetical and those found in the ALJ's decision. *Compare id.*; *with id.* at 22–26. Further, the ALJ's question was not materially vague or misleading so as to render it deficient. In addition, Wilson had a reasonable opportunity to correct any deficiencies in the ALJ's question. *See id.* at 74–80. Wilson's third objection is **OVERRULED**.

Thus, the Court finds that the ALJ's stated review of the entire record, along with his accompanying factual recitation and legal analysis, is sufficient to support the Commissioner's conclusion regarding Wilson's RFC. In short, the Court concludes that the ALJ's step-three finding is supported by substantial evidence. *See Leggett*, 67 F.3d at 564.

### B. Substantial Evidence Supports the ALJ's Jobs Determination at Step Five

Wilson objects to the ALJ's step-five analysis, arguing that the ALJ failed to meet the burden of establishing the existence of other work, in significant numbers, which Wilson can perform. Pl.'s Obj. 2, ECF No. 24 (citing Soc. Sec. Admin R. 28, ECF No. 16-1). The vocational expert identified two occupations that match Wilson's RFC: a document preparer and table worker. *See* Soc. Sec. Admin R. 28, ECF No. 16-1.

At step five, the Commissioner must show "that there is other substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448. When the ALJ cannot rely on the Medical-Vocational Guidelines to determine disability, he "must rely upon expert vocational testimony or other similar evidence to establish that such jobs exist." *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987) (citation omitted). *Veal v. Soc. Sec. Admin.*, 618 F. Supp. 2d 600, 608 (E.D. Tex. 2009) (one such other source of evidence is the Dictionary of Occupational Titles ("DOT")).[1]

---

[1] The Vocational Expert Handbook does not apply because the ALJ's decision was issued on July 5, 2019, a year before its release. Even if it did apply, the "Vocational Expert Handbook guides vocational experts

10

### (1) A Document Preparer Job Requiring Level Three Reasoning under the DOT Is Not Inconsistent with the RFC's Mental Limitations Under These Facts

Wilson argues that "[t]he Commissioner has determined that jobs at reasoning level 3 [like document preparer] create an apparent conflict with a limitation to simple or repetitive work" and, therefore, concludes "this job does not satisfy the Commissioner's burden of establishing the existence of work which [Wilson] can perform[, and] the job of table worker does not exist in significant numbers and is insignificant, standing alone, to carry the Commissioner's burden." Pl.'s Obj 3, ECF No. 24.

The job of document prepare requires a reasoning level of three under the DOT. *See* DOT § 249.587-018 (4th ed., rev. 1991). Though the Fifth Circuit has not addressed whether a claimant limited to simple tasks can perform jobs that the DOT classifies as requiring a reasoning level of three, other circuits have split on the issue. *See Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir. 2009) (no conflict between job requiring reasoning level three and claimant's limitation to simple work); *Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007) (no conflict with claimant's inability to do complex work where job in question required reasoning level three); *cf. Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (claimant's limitation to "simple and routine work tasks" not consistent "with the demands of level-three reasoning" because claimant's RFC was more consistent with level two than level three reasoning); *Martin v. Saul*, No. 5-19-cv-00573-FB-RBF, 2020 WL 4382133, at *6 (W.D. Tex. July 30, 2020).

In the Northern District of Texas, courts have found that the DOT does not "on its face, indicate that jobs with a reasoning development level of three involve more than simple, repetitive work." *Gaige v. Astrue,* No. 4-12-cv-0008-A, 2013 WL 1291754 at *13-14 (N.D. Tex. Mar. 1,

---

in identifying conflicts to the ALJ. The handbook does not direct the ALJ or the ALJ's determination." *Edwards v. Comm'r, SSA*, No. 4:18-cv-372, 2019 WL 4564833, at *2 (E.D. Tex. Sept. 20, 2019) (citing *Courtney v. Comm'r, SSA*, 894 F.3d 1000, 1005, n.2 (8th Cir. 2018)) (citation omitted).

11

2013), *rec. adopted*, 2013 WL 1286289 (N.D. Tex. Mar. 29, 2013); *Caronia v. Colvin*, No. 4:12-cv-595-Y, 2013 WL 5192904, at * 6 (N.D. Tex. Sept. 13, 2013) (DOT level three reasoning does not facially indicate that a job will involve more than simple, repetitive work); *Longoria v. Colvin*, No. 3:13-cv-1690-B-BK, 2014 WL 2777473, at *8 (N.D. Tex. May 21, 2014), *rec. adopted*, No. 3:13-cv-1690-B, 2014 WL 2777375 (N.D. Tex. June 18, 2014) ("simple, repetitive work" does not conflict with DOT reasoning leave three jobs). However, the courts split as to whether an RFC determination that a claimant is limited to simple, routine task is inconsistent with a job requiring level three reasoning. *See McMillian v. Colvin*, No. 4:12-cv-661-A, 2014 WL 61172, at *5 (N.D. Tex. Jan. 6, 2014) ("[T]here are a series of cases that have held that a job with a [reasoning level] of 3 is not inconsistent with an RFC determination that limits a claimant to the performance of simple, routine work tasks"); *cf. Otte v. Comm'r, Soc. Sec. Admin.*, 3:08-cv-2078-P BF, 2010 WL 4363400, at *8 (N.D. Tex. Oct. 18, 2010), *rec. adopted*, 3:08-cv-2078-P BF, 2010 WL 4318838 (N.D. Tex. Oct. 27, 2010) ("Reasoning Level 3 is not compatible with a restriction to simple, routine, repetitive work."); *Davis v. Astrue*, No. 3-06-cv-883-B, 2008 WL 517238, at *5 (N.D. Tex. Feb. 27, 2008) (claimant limited to following simple or detailed instructions not capable of performing job with reasoning level three).

Here, the Court is persuaded that the "low level unskilled sedentary jobs" of document preparer and table worker, as corroborated by both the vocational expert and the DOT are simple and, therefore, not inconsistent with the RFC. *See* Soc. Sec. Admin R. 81, ECF No. 16-1; SSR 00–4p, 65 Fed. Reg. at 75760 (unskilled work corresponds to a specific vocational preparation of one to two); *Caronia*, No. 4:12-cv-595-Y, 2013 WL 5192904, at *7 ("occupation as 'unskilled' indicates that it is 'by definition simple.").

First, a document preparer has a specific vocational preparation skill level of two which is an "unskilled" and simple job. *See* SSR 00–4p, 65 Fed. Reg. at 75760; *see* Soc. Sec. Admin R. 74–75, ECF No. 16-1.

Second, the ALJ attempted to identify any apparent conflicts that exist between the vocational expert's testimony and the DOT by asking the vocational expert whether such an inconsistency exists—twice. Soc. Sec. Admin R. 80, 83, ECF No. 16-1; *See* SSR 00-4p, 2000 WL 1898704, at *1-2 (S.S.A. 2000); *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016) (citations omitted). The ALJ expressly confirmed that the VE's testimony was consistent with the DOT, and Wilson has not shown a conflict between the two. *See* Soc. Sec. Admin R. 80, 83, ECF No. 16-1.

Third, Wilson failed to present a "direct and obvious conflict" on the record in development of the administrative hearing and never objected to the vocational expert's testimony or cross-examined him based on his conclusion of consistency between the testimony and DOT. Soc. Sec. Admin R. 80, 83, ECF No. 16-1; *see* SSR-004p, 2000 WL 1898704, at *4; *Carey*, 230 F.3d at 146–47 (when "direct and obvious conflict" exists between vocational expert's testimony and DOT, ALJ must resolve conflict by determining whether vocational expert's explanation is reasonable and thus more reliable than DOT); *Nichols v. Comm'r of Soc. Sec. Admin.*, No. 10-cv-0651, 2011 WL 2669056, at *6 (N.D. Tex. June 10, 2011), *rec. adopted*, 2011 WL 2669099 (N.D. Tex. July 6, 2011) (if indirect conflict did not undergo adversarial development at administrative hearing, vocational expert's "testimony may be relied upon without resolving the conflict as long as the record reflects an adequate basis for doing so.") (citation omitted). Thus, the Court concludes that there is no conflict between the vocational expert's testimony and the information contained in the

DOT that would warrant a finding of reversible error.[2] Accordingly, Wilson's fourth objection is **OVERRULED.**

### (2) The ALJ's Conclusion that 42,000 Document Prepare Jobs Exist in the National Economy Based on Vocational Expert Testimony Was Proper

Wilson objects to the ALJ's conclusion regarding the existence of document preparer jobs in significant numbers in the national economy. The vocational expert identified 42,000 jobs as a document preparer and 11,000 jobs as a table worker in the national economy. *See* Soc. Sec. Admin R. 16–17, ECF No. 16-1; *see also id.* at 74. Wilson contends that she presented testimony to the AC that there are only 14,256 document preparers in the national economy. Obj. 9–10, ECF No. 24.

The ALJ may rely on the vocational expert's testimony to reach a conclusion regarding the claimant's ability to perform work that exists in a significant number in the national economy. *Masterson v. Barnhart*, 309 F.3d 267, 273 (5th Cir. 2002). And the ALJ did so here. Thus, Wilson's fifth objection is **OVERRULED.** And the Court concludes that the ALJ's step-five finding is supported by substantial evidence. *See Leggett*, 67 F.3d at 564.

---

[2] Even had there been a conflict between the VE's testimony and the DOT, the ALJ properly followed SSR 00-4P to resolve the conflict in favor of the VE's testimony based on the VE's experience elicited at the hearing. 2000 WL 1898704 at *2. The ALJ assumed *arguendo* that a conflict or gap existed between the VE's testimony and the DOT and relied on a reasonable explanation for the resolution. *Compare* Soc. Sec. Admin R. 28, 80, ECF No. 16-1; *with Martin*, 2020 WL 4382133, at *6 ("if the conflict had been identified and explored, the vocational expert may have been able to adequately explain why the jobs were perfectly suitable for Martin notwithstanding her limitations."). Thus, the ALJ properly resolved even a potential conflict in favor of the VE's testimony based on the VE's experience.

## IV.    CONCLUSION

Having conducted a de novo review of the FCR and Wilson's Objections, the Court **OVERRULES** each of Wilson's Objections and **ADOPTS** the reasoning in the Magistrate Judge's FCR. Accordingly, the Court **AFFIRMS** the Commissioner's decision that Wilson is not disabled as defined by the Social Security Act.

**SO ORDERED** on this **16th day** of **March, 2021.**

_____
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**